IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Steer Machine Tool & Die Corporation<br><br>Plaintiff<br><br>vs.<br><br>SS Niles Bottle Stoppers, LLC and<br>Ruth Niles<br><br>Defendants | CIVIL ACTION NO. 3:18-CV-204<br><br>FILED<br>SCRANTON<br>JAN 30 2018<br>Per /m<br>DEPUTY CLERK |

### COMPLAINT FOR VIOLATION OF THE LANHAM AND COPY RIGHT ACTS

Plaintiff, Steer Machine Tool & Die Corporation, by its attorney, as and for its Complaint against SS Niles Bottle Stoppers, LLC, alleges the following:

### Parties

1. Plaintiff Steer Machine Tool & Die Corporation (hereinafter "Plaintiff" or "Steer") is a Pennsylvania corporation, with a principal place of business located at 3113 Lake Ariel Highway, Honesdale, Pennsylvania, a registered office at HCR 6 Box 6025, Hawley, Pennsylvania, and a postal address of 3113 Lake Ariel Highway, Honesdale, Pennsylvania 18431.

2. Defendant SS Niles Bottle Stoppers, LLC (hereinafter "Defendant" or "SS Niles") is a Pennsylvania limited liability company, with a registered office and principal place of business located at 49 Leeds Road, Newville, Pennsylvania.

3. Defendant Ruth Niles (hereinafter "Defendant" or "Ruth") is an adult individual under no legal disability with a last known residence address of 49 Leeds Road, Newville, Pennsylvania. Further, Ruth Niles is, to the best knowledge, information and belief of the Plaintiff,

1

the sole owner of the membership of the Pennsylvania limited liability company Co-Defendant herein, SS Niles.

### Jurisdiction and Venue

4. This action arises under the United States Trademark Act of 1946 ("Lanham Act"), 15 U.S.C. §§ 1051-1127, as well as in the good faith belief of the Plaintiff, copy right infringement under the Copy Right Act 17 U.S.C. § 101, et seq., as well as Pennsylvania statutory and common law. The Court has subject matter jurisdiction under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338, as well as supplemental subject matter jurisdiction 28 U.S.C. § 1367.

5. The Court has personal jurisdiction over Defendant SS Niles based on SS Niles's operation of its business and contacts within this jurisdiction.

6. This Court has personal jurisdiction over Defendant Ruth based on Ruth's contacts within this jurisdiction.

7. Venue is proper in this district pursuant to 28 U.S. C. § 1391(b)-(c) as the claim rose in this jurisdiction by reason of the unfair competition, trademark infringement, false designation as well as the violations of a settlement agreement entered into in prior litigation in this honorable Middle District of Pennsylvania, United States District Court.

### Facts Common to All Claims for Relief

8. Steer is engaged in the business of inventing, patenting, marketing and selling among other tool and die, bottle stoppers and mandrels, and other bottle stopper turning accessories, both to individuals and business entities which have use for the same. In conjunction therewith, Steer owns and controls the domain name of ssbottlestoppers.com (a domain name owned by Steer but which is not used per the referenced settlement agreement) and the domain name

stainlessbottlestoppers.com which is the website Steer sells on in light of the referenced settlement agreement. Further, Steer owns and controls valid and enforceable patents from the United States Patent and Trademark Office identified as D575,639, D780,574 and D578,853.

9. Steer has patents pending, to wit, application 29/620,713 for hourglass bottle stopper.

10. SS Niles holds itself no patents.

11. SS Niles only owns and controls a mark SS Niles and a domain name of www.nilesbottlestoppers.com.

12. SS Niles only has a patent license from Steer which is non exclusive and non transferable to make, sell, use and offer for sale such licensed bottle stoppers of Steer solely for its use and as Steer's patent bottle stoppers. Said patent license of Steer to SS Niles exists only as long as Ruth Niles is the SS Niles with either a sale of assets, stock or other substantial change in business operation of SS Niles or with Ruth Niles no longer the principal owner of SS Niles, that license automatically stops and is of no tangible or intangible value.

13. Steer has the agreed upon permitted mark to use SS for the purpose of abbreviating stainless steel and can identify its products, such as 304 (being used as an example only) SS Bottle Stoppers.

14. SS Niles will only use the designation of SS in front of its number bottle stopper to designate its products.

15. SS Niles and Steer and their respective principals, Ruth Niles for SS Niles, and the Seeuwen brothers, Eric and Steven for Steer, have acknowledged the trademarks of each other and acknowledged the patents of Steer that existed in the past with SS Niles receiving a specific patent license as described above.

16. SS Niles and principal Ruth Niles, Steer and its principals, Eric and Steven Seeuwen had a prior business relationship which came to unhappy differences leading to a case number in the United States District Court for the Middle District of Pennsylvania identified by Case Number 3:16-CV-00320 entitled SS Niles Bottle Stoppers, LLC vs. Steer Machine Tool & Die Corporation. The facts set out above are reflected in said litigation and culminated in a settlement agreement and mutual release which was entered into and executed by the parties and filed with the Court's Order.

17. Said settlement agreement and mutual release is attached hereto and made a part hereof as **Exhibit A**. The purpose of said settlement agreement and mutual release was not only to settle the aforesaid litigation but to describe the parameters of what was the proprietary trademark and patents of the respective parties and how the parties would continue to conduct their business in the future in the industry sector of woodworking and machine products of their two companies.

18. The concept of the settlement agreement signed by the parties was a contractual relationship to respect the proprietary interest and legal rights of the respective trademarks and patents of the parties.

19. As relevant to the matter of the Court's supplemental subject jurisdiction appurtenant to a settlement agreement and the release, SS Niles and Ruth Niles commenced on a course of action which has resulted in not only violations of the settlement agreement as to what was agreed, that is the proprietary trademark and patent of Steer, but also to violate the settlement agreement as to its non disparagement and confidentiality.

20. In the interim, after disassociation culminating in the settlement agreement with SS Niles, Steer continues its business in conformity with said settlement agreement and respectful of its provisions thereof as to SS Niles's intellectual property and also commences to develop new

patents to make application to the United States Patent Trademark Office as it pursues its business endeavors.

21. From the time of entry into the settlement agreement through 2016 into the summer of 2017, Ruth Niles by her using SS Niles solicits and posts on social media derogatory, injures, disparaging matters appurtenant to Steer which is part of the matter of supplemental subject matter of jurisdiction herein appurtenant to a violation of the settlement agreement. In that context, on August 14, 2017, SS Niles posts through Ruth Niles on social media (Facebook) a new mandrel which SS Niles is selling. SS Niles through Ruth Niles and posting claims the knock-off guys are selling them so she (Ruth Niles through SS Niles) will too. The image that SS Niles / Ruth Niles posts is the custom image of Steer on their web page of their product which can be found on the link https://www.stainlessbottlestopper.com which is a domain that was acknowledged by SS Niles and Ruth Niles to be Steer's domain and proprietary to Steer.

22. The aforesaid constitutes an intentional, conscious, grievous interference with the custom image of Steer from its website of its own product and constitutes and assertion to cause confusion and unfair competition by SS Niles / Ruth Niles in the social media (Facebook) that this is her / SS Niles's new mandrel. The only source of the picture in question on the SS Niles facebook page is the picture from Steer's website on the internet. See **Exhibit B**.

23. Concurrently, SS Niles posted an image of a series of stoppers with one lying on its side. The same is the image of Steer's new number 501 stopper with patent pending. See **Exhibit C**. The posted stoppers are asserted by SS Niles acquired from a Jerry Sowers of Indiana. Steer has never had a customer or principal of a customer with the name of Jerry Sowers in Indiana. The source of the image that SS Niles posts is a corruption of the new number 501 stopper of Steer which

has its patent pending. This posting together with SS Niles's website and trade magazine where SS Niles / Ruth Niles also posted the 501 stopper, damages Steer as it creates confusion to the retail and business consumers of bottle stoppers as to Steer's new product who was the creator and sole source of the same.

24. This second posting dumps misinformation to the text repeating SS Niles's prior trolling on social media in 2016 until now in late summer of 2017 that Steer is not original, not inventive, not creative. It distracts third party professionals and hobbyists from transacting with Steer as regards Steer's products and trustworthiness of the principals of Steer creating unfair competition as well as false confusion again to the woodworking professionals and hobbyists.

25. SS Niles places on its website as part SS-8100 the Steer 501 product stopper, which is patent pending. See **Exhibit D**.

26. Between October 27, 2016 and April 5, 2017, SS Niles inserts the term SS Bottle Stopper on the About Us page on the internet, and uses the term SS Bottle Stoppers in Alt text. Not only does this violate the settlement agreement, it infringes on the proprietary interest and ownership recognized in the settlement agreement provisions on trademark, patent, et al. to the damage and injury of Steer.

27. In the About Us page of SS Niles's website, SS Niles lists the patent and number for the Steer No. 301. The manner in which this listing on the SS Niles's About Us page attempts to make the patent invalid and challenges its validity (which is contrary to the facts and the proprietary interest of Steer which SS Niles recognized in its settlement agreement with Steer) and that manner in which SS Niles's About Us page consciously attempts to make the patent invalid is because the About Us page states that the No. 301 stopper was being sold for two (2) years before applying for

the patent, which is false and in breach of the said settlement agreement. The same is as regards the matter of the supplemental subject matter of jurisdiction, part of an ongoing conduct of SS Niles and Ruth Niles to consciously and intentionally injure and harm Steer in total disregard of promises made in the settlement of the action and court order on the settlement agreement.

28. SS Niles's listing on its About Us as described above provides information of prior business dealings as SS Niles states - she got the patent with the former manufacturer, whereas the patent existed at the time of the settlement agreement when SS Niles and Steer were listed on the patent. Under the agreement, the patent became Steer's. The said settlement agreement, which is part of the supplemental subject matter of jurisdiction, contains the prohibition that neither Steer nor SS Niles will contest or assist in the contest of any form of the validity of the patents as they are subscribed to the respective parties under the settlement agreement. This is not only a breach of the settlement agreement but more importantly, the patent stands as a proprietary interest to be protected under Federal as well as Pennsylvania statutory and common law and it is now contested as to its validity by SS Niles in the actions described. The reference to prior business dealings, also under the supplemental subject matter of jurisdiction, is prohibited under the said settlement agreement. This all occurs while Steer does nothing to contest any patents that SS Niles may have nor does Steer discuss any prior business relationships except in this proceeding where it is seeking its rights under Federal law and Pennsylvania statutory and common law to protect its proprietary interest in the same.

29. In December of 2017, SS Niles in the American Woodturner magazine uses Steer's image of Steer's mandrel in its ad advertising.

Also in the same advertisement by SS Niles in American Woodturner magazine, in

its advertisement of the Steer mandrel, also advertised clearly the hourglass bottle stopper of Steer to which Steer has a patent pending. Steer caused SS Niles to remove the 501 hourglass bottle stopper from its website and asserts that it, SS Niles, is no longer selling the same. However, at least one of SS Niles's distributors still is to the information and belief of Steer, to wit, Big Monk Lumber at http://www.bigmonklumber.com/index.html as late as December 14, 2017.

30. In SS Niles's Facebook posting as last known to Steer, SS Niles has not removed the image that SS Niles took from the Steer website and was/is using the same on its Facebook posting. The advertisement in the magazine, the appearance on the website and the continuing appearance on Facebook are blatant copyright violations of Federal law. Additionally, under the supplemental subject matter of jurisdiction, the same violates the aforementioned settlement and confidentiality agreement.

31. Concurrently with these postings on SS Niles's website, there is comment made by SS Niles / Ruth Niles that the postings are the same 701, we just implemented a new numbering system to distinguish SS Niles top quality bottle stoppers from copycats. The effect of which is SS Nile in the public domain treats Steer which has a catalog that uses No. 301 and No. 701 as imitators and copycats where Steer has the proprietary copyright to these items and SS Niles's characterization is to cause injury to Steer's proprietary interest in Steer's products for which there is patented and patent pending, besides being a violation of the settlement agreement. There is nothing inadvertent or mistake on SS Niles / Ruth Niles's part in doing this. This is part of the ongoing efforts of SS Niles in derogation of Federal Trademark Act and Pennsylvania statutory and common law to injure and damage Steer as well as to continue the violation of the matter of the supplement subject jurisdiction, to wit, the settlement agreement where there was to be no belittling by either party of

8

the other and the same by SS Niles and Ruth Niles intentionally belittles, disparages, depreciates, trivializes, downgrades, and sneers.

32. The effect of SS Niles's actions and omissions in use of Steer's marks and patent products is to cause purchasers to believe that SS Niles's business is associated with the subject products as a result of SS Niles's presentation as to its creativity and superior product quality to other competitors, that any other identical or similar product is inferior and that the goods offered for sale or distributed by SS Niles as described above are to dissuade, seduce and misdirect the woodworking professionals and hobbyists from Steer and its products of its creativity for which it has secured protection under the Federal as well as associated state and common law. In doing so, any hobbyist or professional would be misdirected to SS Niles to the detriment and loss of Steer.

33. SS Niles received at the instance of Steer a cease and desist letter from its intellectual property counsel. The same resulted in SS Niles / Ruth Niles removing the item from SS Nile's website, but otherwise to continue as described above. Ruth Niles communicated by telephone with intellectual property counsel of Steer and advised that she would cease and desist. However, to the information of Steer as averred herein, more particularly but not specifically limited to paragraphs 29, 30, 31 and 32, continues. SS Niles and Ruth Niles's actions have been deliberate and willful. The same are infringements upon the property protected as a trademark and patent of Steer. SS Niles and Ruth Niles have deliberately and willfully engaged in acts of unfair competition and deceptive practice by making things appear as if they are the results of SS Niles / Ruth Nile's creativity and work which they are not, they are Steer's.

34. It is the information and belief of Steer that SS Niles and Ruth Niles will continue to its course of conduct and use of these trademark and patents despite the knowledge which is

reflected in the settlement agreement that the same are Steer's and not SS Niles's.

35. All of these violations occur in a larger context of SS Niles trolling Steer and disparaging, impugning, injuring, misrepresenting the professionalism of Steer with posting on social media first as regards a unimaginative copyist and then specifically with individual personal references of principals of Steer as copyist without imagination and to produce cheap, uncreative, generic work violating the said settlement agreement which was the foundation of the recognition of the proprietary ownership of the intellectual property protected by Federal law as well as Pennsylvania statutory and common law which SS Niles / Ruth Niles consciously infringed, violated and used the same essentially undeterred. Attached hereto and made a part hereof as **Exhibit E** with 18 subparts, reflecting the violations of the settlement agreement which reflect that the agreement which was had, which is the foundation of the violations herein, has also been violated as part of the supplemental subject jurisdiction hereof to be enforced now against SS Niles. The remedy of the monetary penalty for violation of the agreement is not an adequate enough remedy at law to deter SS Niles as SS Niles has demonstrated it will continue to expend its use, though it has actual knowledge that it has admitted and agreed to, and do so in copyright and trademark violation of Steer's rights and property.

## COUNT I

### Federal Trademark Infringement - 15 U.S.C. §1117

36. Steer repeats and rel-alleges each and every allegation in paragraphs 1-35, which are incorporated herein by reference.

37. SS Niles has infringed on Steer's word marks by making direct copies or near identical copies of the marks and goods to compete directly to the same customer base as Steer,

which customer base Steer and SS Niles share not only by prior history but by geographic location, and the sources of marketing available to SS Niles are the ones which Steer utilizes.

38. SS Niles's action and use not only while infringing on Steer's rights and property creates direct confusion and is likely to continue to confuse the consumers as to the affiliation, origin and source of the products of Steer as being those of SS Niles, which is not factually correct and the same being in violation of the Lanham Act.

39. SS Niles's use as complained of creates reverse confusion in that third party consumers can falsely associate Steer brand as being a pale imitation by Steer which is a copyist and unimaginative, unprofessional, inadequate and inferior when there is no such affiliation and that is a further violation fo the Lanham Act.

40. SS Niles has more than constructive notice of Steer's marks. It has actual notice by reason of the said settlement agreement which is a part hereof as Exhibit A, but nonetheless has wilfully decided to use the marks in an authorized fashion.

41. SS Niles of late has increased its use of the marks though aware of the marks' ownership by Steer.

42. There is nothing inadvertent, unintentional, or accidental of SS Niles's actions herein. The same being infringement are willful, intentional, and voluntary.

43. Steer is irreparably harmed unless the infringement by SS Niles is not permanently enjoined and SS Niles further permanently enjoined to perform the settlement agreement of which the marks and patents are an intrical part. Said agreement being a document for the future competitive business activities of the parties which SS Niles chose to fully ignore and violate repetitively.

44. This is an exceptional case pursuant to Lanham Act § 35(a), 15 U.S.C. § 1117(a), in light of poignant, willful disregard of Steer by SS Niles of Steer's prior and superior right and in view of SS Nile's trolling of Steer, its continued use and expansion of the marks as it continues to violate after a cease and desist letter making one action of correction but not all actions of correction.

WHEREFORE, Plaintiff respectfully demands judgment against the Defendant:

(1) permanently restraining and enjoining Defendant and all persons acting in concert with the Defendant or purporting to act on its behalf or in active concert or in participation with Defendant, including but not limited to, its principals, agents, servants, employees, successors, licensees, or assigns, from infringing on the marks and patents of Steer and from falsely designating the origin, sponsorship or affiliation of Defendant's business and service with the products of Steer, and from claiming the products of Steer as their own while denigrating the Steer products, and from unfairly competing with the Plaintiff in any manner whatsoever;

(2) pursuant to 15 U.S.C. § 1116, ordering Defendant to file with the Court and to serve on Plaintiff's counsel within thirty (30) days after service of any final injunction issued herein, or within such reasonable time as the Court may direct, a report in writing and under oath, setting forth in detail the manner and form in which Defendant has complied with such injunction;

(3) pursuant to 15 U.S.C. § 1117, ordering an award of:

    a. Compensatory damages, in an amount to be determined at trial, arising out of the foregoing acts of infringement and unfair competition and sustained by reason of said wrongful acts, including the penalty of the settlement agreement;

    b. Treble damages for all compensatory damages awarded;

    c. Defendant's profits as a consequence of the acts of infringement and an

accounting of said profits;

        d.    The costs of the action; and

        e.    Plaintiff's reasonable attorneys' fees incurred herein;

(4)    for all such other and further relief as the Court deems appropriate under the circumstances.

## COUNT II

### Federal Unfair Competition - 15 U.S.C. § 1125(a)(1)(A)

45.    Steer repeats and re-alleges each and every allegation in paragraphs 1-44, which are incorporated herein by reference.

46.    Defendant has willfully used trademarks and has challenged the validity of patents to cause confusion to Steer's products, marks and patents or patent pendings.

47.    Defendant uses the marks of Steer as the Defendant's brand in channels of trade.

48.    Defendant's use and actions as described above creates a likelihood of confusion as to the affiliation, origin, or source of goods and services of Steer in distinction to SS Niles. The same occurs by direct confusion which SS Niles has set out and the effects of reverse confusion which are a consequence of the disinformation, falsity and confusion SS Niles has perpetuated.

49.    As a direct and proximate result of SS Nile's conduct, Steer has been and is likely to continue to be injured in its business with great harm to its goodwill, reputation and loss of revenue and profits.

50.    This is an exceptional case pursuant to Lanham Act § 35(a), 15 U.S.C. § 1117(a), in light of the Defendant by signing the aforesaid settlement and confidentiality agreement has expressed knowledge of what is Steer's trademarks and patents and has willfully and recklessly

disregarded the same though they are prior and superior to SS Niles.

WHEREFORE, Plaintiff respectfully demands judgment against the Defendant:

(1) permanently restraining and enjoining Defendant and all persons acting in concert with the Defendant or purporting to act on its behalf or in active concert or in participation with Defendant, including but not limited to, its principals, agents, servants, employees, successors, licensees, or assigns, from infringing on the marks and patents of Steer and from falsely designating the origin, sponsorship or affiliation of Defendant's business and service with the products of Steer, and from claiming the products of Steer as their own while denigrating the Steer products, and from unfairly competing with the Plaintiff in any manner whatsoever;

(2) pursuant to 15 U.S.C. § 1116, ordering Defendant to file with the Court and to serve on Plaintiff's counsel within thirty (30) days after service of any final injunction issued herein, or within such reasonable time as the Court may direct, a report in writing and under oath, setting forth in detail the manner and form in which Defendant has complied with such injunction;

(3) pursuant to 15 U.S.C. § 1117, ordering an award of:

    a. Compensatory damages, in an amount to be determined at trial, arising out of the foregoing acts of infringement and unfair competition and sustained by reason of said wrongful acts, including the penalty of the settlement agreement;

    b. Treble damages for all compensatory damages awarded;

    c. Defendant's profits as a consequence of the acts of infringement and an accounting of said profits;

    d. The costs of the action; and

    e. Plaintiff's reasonable attorneys' fees incurred herein;

(4) for all such other and further relief as the Court deems appropriate under the circumstances.

## COUNT III

### Violation of Pennsylvania Unfair and Deceptive Practices

### 73 P.S. § 201-1 et seq.

51. Steer repeats and re-alleges each and every allegation in paragraph 1-50, which are incorporated herein by reference.

52. On information and belief, Defendant's acts complained of herein have been committed knowingly, intentionally, in bad faith, and to cause willfully, intentionally and knowingly confusion, mistake and deception among consumers.

53. Defendant has willfully used the trademark and patents in a manner confusing as to what is Steer's property, which the Defendant has acknowledge and admitted to, and such conduct constitutes unfair and deceptive trade practices in violation of 73 P.S., § 201-1 et seq.

54. Defendant's use has been continuing despite the cease and desist of confusing the consumer in the identical field of goods and services as Steer, and doing so using similar marketing channels that Steer uses and doing so in direct competition to Steer unfairly and deceptively.

55. Defendant's use of Steer's marks and patents creates direct confusion and reverse confusion as to the affiliation, origin, or source of the goods in violation of statutory code of the Commonwealth of Pennsylvania.

56. As a direct and proximate result of Defendant's conduct, Steer has been and is likely to continue to be substantially injured in its business, including harm to its goodwill and reputation and loss of revenues and profits.

WHEREFORE, Plaintiff respectfully demands judgment against the Defendant:

(1) permanently restraining and enjoining Defendant and all persons acting in concert with the Defendant or purporting to act on its behalf or in active concert or in participation with Defendant, including but not limited to, its principals, agents, servants, employees, successors, licensees, or assigns, from infringing on the marks and patents of Steer and from falsely designating the origin, sponsorship or affiliation of Defendant's business and service with the products of Steer, and from claiming the products of Steer as their own while denigrating the Steer products, and from unfairly competing with the Plaintiff in any manner whatsoever;

(2) pursuant to 15 U.S.C. § 1116, ordering Defendant to file with the Court and to serve on Plaintiff's counsel within thirty (30) days after service of any final injunction issued herein, or within such reasonable time as the Court may direct, a report in writing and under oath, setting forth in detail the manner and form in which Defendant has complied with such injunction;

(3) pursuant to 15 U.S.C. § 1117, ordering an award of:

    a. Compensatory damages, in an amount to be determined at trial, arising out of the foregoing acts of infringement and unfair competition and sustained by reason of said wrongful acts, including the penalty of the settlement agreement;

    b. Treble damages for all compensatory damages awarded;

    c. Defendant's profits as a consequence of the acts of infringement and an accounting of said profits;

    d. The costs of the action; and

    e. Plaintiff's reasonable attorneys' fees incurred herein;

(4) for all such other and further relief as the Court deems appropriate under the

circumstances.

## COUNT IV

### Unfair Competition in Violation of Pennsylvania Common Law

57. Steer repeats and re-alleges each and every allegation in paragraphs 1–56, which are incorporated herein by reference.

58. Defendant has willfully used trademark(s) that are confusingly similar to Steer's common law rights in the marks and patent.

59. Defendant uses confusingly marks and products in identical fields of goods and services in direct competition with Steer and uses similar marketing channels.

60. Defendant's use creates direct confusion and reverse confusion as to the affiliation, origin or source of the services performed by the parties in violation of the common law of Commonwealth of Pennsylvania.

61. As a direct and proximate result of Defendant's conduct, Steer has been and is likely to continue to be substantially injured in its business, including harm to its goodwill and reputation and loss of revenues and profits.

WHEREFORE, Plaintiff respectfully demands judgment against the Defendant:

(1) permanently restraining and enjoining Defendant and all persons acting in concert with the Defendant or purporting to act on its behalf or in active concert or in participation with Defendant, including but not limited to, its principals, agents, servants, employees, successors, licensees, or assigns, from infringing on the marks and patents of Steer and from falsely designating the origin, sponsorship or affiliation of Defendant's business and service with the products of Steer, and from claiming the products of Steer as their own while denigrating the Steer products, and from

unfairly competing with the Plaintiff in any manner whatsoever;

(2) permanently restraining and enjoining Defendant and all persons acting in concert with the Defendant or purporting to act on its behalf or in active concert or in participation with Defendant, including but not limited to, its principals, agents, servants, employees, successors, licensees, or assigns, from breaching the settlement agreement.

(3) for all such other and further relief as the Court deems appropriate under the circumstances, including the imposition of the monetary penalty for violation of the settlement agreement.

## COUNT V

### Pennsylvania Common Law Breach of Contract

62. Steer repeats and re-alleges each and every allegation in paragraphs 1–61, which are incorporated herein by reference.

63. SS Niles through its principal, Ruth Niles, executed a settlement agreement (Exhibit A hereof). Said settlement agreement was executed as evidenced by the agreement in the United States District Court for the Middle of District of Pennsylvania, Scranton, Pennsylvania.

64. Said settlement agreement is an enforceable contract.

65. Said settlement agreement provided for mutual promises and undertakings of the within Defendant to the Plaintiff and the within Plaintiff to the Defendant.

66. Said mutual promises and undertakings were fair consideration to each of the parties to the settlement agreement which were respectively, the Plaintiff and the Defendant. The said Co-Defendant, SS Niles, executed the settlement agreement for SS Niles.

67. As incorporated herein by reference to the paragraphs above, the Defendant SS Niles

has breached various portions of the settlement agreement.

68. SS Niles and Ruth Niles utilizing SS Niles has also violated said settlement agreement by disparaging, impugning, and derogating the said Plaintiff though SS Niles and Ruth Niles executed for SS Niles are aware that the same was prohibited under said settlement agreement (Exhibit A hereof).

69. SS Niles and Ruth Niles executed for SS Niles have violated said settlement agreement as regards the non disparagement prohibitions as evidenced by the averments above and the Exhibit B reflecting the trolling on social media by SS Niles / Ruth Niles of Steer and its principals, the Seeuwen brothers, of whom (Steven) SS Niles / Ruth Niles identifies as Curly which is an unmistakable identification of Steven Seeuwen.

70. Each and all of the foregoing activity as described in the facts, the Exhibits and the above Counts are a breach of the settlement agreement. SS Niles is liable to Steer for consequential damages, incidental damages, liquidated damages and any other damages that are available, including those prescribed in the settlement agreement.

WHEREFORE, Plaintiff respectfully demands judgment against the Defendants permanently restraining and enjoining the Defendants and all persons acting in concert with the Defendants or purporting to act on the Defendants' behalf or in active concert or in participation with Defendants, including but not limited to, its principals, agents, servants, employees, successors, licensees, or assigns, from breaching the said settlement agreement (Exhibit A) hereof, and pursuant to said settlement agreement and Pennsylvania Common Law an award of consequential damages, incidental damages, liquidated damages and any other damages that are available, together with costs of this action, the Plaintiff's reasonable attorney's fees incurred herein, and all other such relief as

the Court may deem appropriate under the circumstances.

Respectfully submitted,

Dated: 1-30-2018

_____
Brigid E. Carey, Esquire
Pa. Attorney ID 08308
3218 Pittston Avenue
PO Box 4466
Scranton, PA 18505-6466
Phone: (570) 344-1799
Cell: (570) 430-4964
Fax: (570) 341-7060