# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEER MACHINE TOOL & DIE CORPORATION, | : | No. 3:18cv204 |
| Plaintiff | : | (Judge Munley) |
| v. | : | |
| SS NILES BOTTLE STOPPERS, LLC and RUTH NILES, | : | |
| Defendants | : | |

## MEMORANDUM

Before the court is a motion to dismiss three counts of plaintiff's complaint filed by Defendant SS Niles Bottle Stoppers, LLC and Defendant Ruth Niles. The parties have briefed the matter and it is ripe for disposition. For the reasons articulated below, we will deny the defendants' motion.

**Background**

This case comes before the court as a trademark and breach of contract dispute. Plaintiff Steer Machine Tool & Die Corporation (hereinafter "Steer Machine) manufactures, among other things, stainless steel bottle stoppers.[1] (Doc. 1, Compl. ¶ 8). Steer Machine owns and controls patents from the United States Patent and Trademark Office relating to these manufactured bottle stoppers. (Id.) Defendant SS Niles Bottle Stoppers, LLC, (hereinafter "SS Niles"),

---

[1] A bottle stopper is an accessory used to close leftover bottles of wine, olive oil, balsamic vinegar, bath oil, liquors, and other decorative herb bottles.

which is owned by Defendant Ruth Niles, also manufactures bottle stoppers. (Id. ¶ 3). SS Niles does not hold any current patents. (Id. ¶ 10). The parties have a business relationship in which SS Niles has a patent license from Steer Machine to make, sell, and use licensed bottle stoppers of Steer Machine. (Id. ¶ 12).

Notably, this is not the first time that these parties are before this court on a business dispute relating to their bottle stoppers. In 2016, SS Niles sued Steer Machine alleging, *inter alia*, trademark infringement. (See SS Niles Bottlestoppers, LLC v. Steer Machine Tool & Die Corp., Case No: 3:16-CV-0032). On October 4, 2016, SS Niles notified the court that the case had settled by way of a settlement agreement between the parties. The settlement agreement described the parameters of what was the proprietary trademark and patents of the respective parties, and noted how the parties would continue to conduct their businesses in the future.

After receiving notice of the settlement agreement, the Clerk of Court closed the case. Over a year later, on November 20, 2017, Steer Machine filed a motion to reopen the case and a motion for contempt, arguing that SS Niles had failed to comply with the settlement agreement. Because the agreement being contested was strictly between the parties and was never entered by the court, we denied Steer Machine's motions and concluded that we no longer had jurisdiction to enforce the settlement agreement.

Two months later, on January 30, 2018, Steer Machine (hereinafter "plaintiff") filed the instant action against SS Niles and Ruth Niles, president of SS Niles (hereinafter collectively "defendants"). Plaintiff Steer Machine contends that from the time the parties entered into the settlement agreement in October 2016 through the summer of 2017, the defendants repeatedly made derogatory and disparaging posts on social media about the plaintiff, in violation of the parties' settlement agreement. (Doc. 1, Compl. ¶ 21). In addition, on more than one occasion, the defendants posted images of mandrels, bottle stoppers, and other manufactured items on their social media accounts. (Id. ¶¶ 22, 23). According to the plaintiff, the defendants portrayed these images to be their own manufactured creations, when in reality, the images were custom images of the plaintiff, copied from the plaintiff's website. (Id. ¶ 24). Plaintiff's complaint further alleges that the defendants posted inappropriate and inflammatory messages about the plaintiff through the website www.nilesbottlestoppers.com. (Id. ¶¶¶ 26, 27, 28).

Plaintiff's counsel eventually sent the defendants a cease and desist letter. (Id. ¶ 33). Defendant Ruth Niles advised the plaintiff that she agreed to cease and desist. (Id.) Nevertheless, plaintiff alleges that the defendants' conduct continued. Thus, plaintiff filed the instant five count complaint. (Doc. 1). The complaint raises the following causes of action: Count I: Federal Trademark Infringement in violation of 15 U.S.C. § 1117; Count II: Federal Unfair

Competition in violation of 15 U.S.C. § 1125(a)(1)(A); Count III: Pennsylvania Unfair and Deceptive Practices in violation of 73 P.S. § 201-1 et seq.; Count IV: Unfair Competition in violation of Pennsylvania common law; and Count V: Breach of Contract in violation of Pennsylvania common law.

On April 2, 2018, the defendant filed a motion to dismiss what we construe to be Counts I, II, and V of plaintiff's complaint. (Doc. 11). The parties then briefed the motion, bringing this case to its present posture.

**Jurisdiction**

The court has federal question jurisdiction over this case that alleges violations of the United States Trademark Act of 1946, 15 U.S.C. §§ 1051-1127. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."); 28 U.S.C. §§ 1343(a)(3),(4) (granting district court jurisdiction over civil actions brought to redress deprivations of constitutional or statutory rights by way of damages or equitable relief). The court has supplemental jurisdiction over plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a). ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

4

**Discussion**

As noted above, plaintiff's complaint raises five causes of action. Presently, the defendants seek to dismiss Counts I, II, and V. We will begin our analysis with plaintiff's claims filed under the Lanham Act.

**I. Lanham Act Claims - Counts I and II**

The defendants move to dismiss plaintiff's Lanham Act claims: Count I, Federal Trademark Infringement in violation of 15 U.S.C. § 1117, and Count II, Federal Unfair Competition in violation of 15 U.S.C. § 112(a)(1)(A). The defendants appear to argue, pursuant to Federal Rule of Procedure 12(b)(6), that the plaintiff has failed to state a claim for relief regarding these claims. Specifically, the defendants contend that Counts I and II should be dismissed because the plaintiff has not shown injury to its reputation or sales that was proximately caused by the defendants' misrepresentations. After carefully reviewing the materials before us, however, we find that defendants are actually challenging the plaintiff's standing to sue on Count II, pursuant to Federal Rule of Civil Procedure 12(b)(1).  Our reasoning follows.

To prevail on a claim for trademark infringement and unfair competition under the Lanham Act, a plaintiff must establish the following three elements: 1) that the mark is valid and legally protectable; 2) that the plaintiff owns the mark; and 3) that the defendant's use of the mark is likely to cause confusion. <u>Kos</u>

5

Pharms., Inc. v. Andrx Corp., 369 F.3d 700, 711 (3d Cir. 2004). At no point in the defendants' brief do the defendants make mention of these elements. Instead, the defendants appear to construe the test for establishing a violation of the Lanham Act as a two-pronged method that was created by the Supreme Court in Lexmark Intl, Inc. v. Static Control Components Inc., 572 U.S. 118, 134 S.Ct. 1377 (2014). According to the defendants, first, "[p]laintiff must show an injury to a commercial interest in their reputation or sales. Additionally, the [p]laintiff must also show that the injury, if proven, was proximately caused by [d]efendants' misrepresentations." (Doc. 13, Def.'s Br. in Supp. at 2). Upon review, we find that the defendants have misinterpreted the holding in Lexmark.

As noted above, the defendants here argue that the plaintiff has failed to establish a violation of the Lanham Act because it did not show that its injury was proximately caused by the defendants' actions. The Court in Lexmark, however, did not address how to establish a violation of the Lanham Act. Rather, the Court granted certiorari in Lexmark to decide "the appropriate analytical framework for determining a party's **standing** to maintain an action **for false advertising** under the Lanham Act." (Id. at 1385). (emphasis added). Thus, we now review that framework.

"Article III of the Constitution limits the judicial power of the United States to the resolution of Cases and Controversies, and Article III standing enforces the

6

Constitution's case-or-controversy requirement." Hein v. Freedom From Religion Found., Inc., 551 U.S. 587, 597–98 (2007). "One of the controlling elements in the definition of a case or controversy under Article III is standing." Id. at 598. In analyzing whether the plaintiff in Lexmark had standing to pursue its false advertisement claim against the defendant, the Court noted that the statute for Federal Unfair Competition pursuant to 15 U.S.C. § 1125(a) authorizes suit by "any person who believes that he or she is likely to be damaged" by a defendant's false advertising. Recognizing the breadth of that language as well as the unlikelihood that Congress meant to allow all factually injured plaintiffs to recover, the Court concluded that all plaintiffs must fall within the zone of interest of § 1125(a) and must have injuries that are proximately caused by violation of the statute.

The Court found that in order to come within the zone of interest in a suit for false advertising under 15 U.S.C. § 1125(a), Federal Unfair Competition, the plaintiff must allege an injury to a commercial interest in reputation or sales. Additionally, a plaintiff suing under § 1125(a) must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising, i.e. proximate cause.

At this juncture, we now consider whether the narrow question of whether the plaintiff in the case before us has adequately demonstrated that it has

7

standing to pursue its false advertisement claim under the Lanham Act.[2] Applying the Lexmark principles to the plaintiff's false advertising claim, we conclude that the plaintiff does come within the class of plaintiffs whom Congress authorized to sue under § 1125(a).

First, the plaintiff's alleged injuries are precisely the sorts of commercial interests the Lanham Act protects. The plaintiff contends that from the time the parties entered into a settlement agreement in October 2016 through the summer of 2017, the defendants repeatedly made derogatory and disparaging posts on social media and elsewhere about the plaintiff. (Doc. 1, Compl. ¶ 21). On several occasions, the defendants posted images of the plaintiff's mandrels, bottle stoppers, and other manufactured products on the defendants' social media accounts, pretending that the products were theirs. (Id. ¶ 23). Plaintiff's complaint further alleges that the defendants continued to post inappropriate and inflammatory messages about the plaintiff through the website www.nilesbottlestoppers.com. (Id. ¶¶ 26, 27, 28).

Based on these pleadings, we find that the plaintiff is suing "not as a deceived consumer, but as a 'perso[n] engaged in' 'commerce within the control

---

[2] Because the holding in Lexmark relates only to plaintiff's Federal Unfair Competition claim pursuant to 15 U.S.C. § 112(a), we find that the defendants have failed to present an argument supporting the dismissal of plaintiff's Federal Trademark Infringement claim pursuant to 15 U.S.C. § 1117. As such, plaintiff's motion to dismiss Count I will be denied.

8

of Congress' whose position in the marketplace has been damaged by the defendants' false advertising." Lexmark, 134 S.Ct. at 1393 (citing § 15 U.S.C. § 1127). Similar to the Court's conclusion in Lexmark, we find that "there is no doubt that [plaintiff] is within the zone of interests protected by the statute." Id.

We further find that the plaintiff sufficiently alleged that its injuries were proximately caused by the defendants' misrepresentations. Unlike the parties in Lexmark, the parties in the instant case are direct competitors of each other. Both the plaintiff and the defendants engage in the business of manufacturing and selling bottle stoppers. The arrangement before us is "the 'classic Lanham Act false-advertising claim' in which 'one competito[r] directly injur[es] another by making false statements about his own goods [or the competitor's goods] and thus inducing customers to switch.' " Id. at 1393 (citing Harold H. Huggins Realty, Inc. v. FNC, Inc., 634 F.3d 787, 799 n.24 (5th Cir. 2011)). The plaintiff alleges that as a direct and proximate cause of the defendants' conduct, the plaintiff has been and is likely to continue to be injured in its business reputation, and lose revenue and profits. (Doc. 1, Comp. ¶ 49). Thus, consistent with the law before us, we find that the plaintiff has satisfied the requirement of proximate causation.

As such, we conclude that the plaintiff has alleged an adequate basis to proceed on its false advertisement claim under § 1125(a). The defendants' motion to dismiss Count II will be denied.

## II. Breach of Contract – Count V

The defendants also move to dismiss Count V, plaintiff's breach of contract claim. As noted above, the parties had a prior business dispute which lead to a previous case in this district, <u>SS Niles Bottle Stoppers, LLC v. Steer Machine Tool & Die Corporation</u>, Case No: 3:16-CV-0032. This litigation was resolved by way of a settlement agreement. Now, the plaintiff alleges that the defendant has violated parts of that settlement agreement.

### A. Legal Standard

The defendants filed their motion to dismiss Count V of plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion. All well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether, " 'under any reasonable reading of the pleadings, the plaintiff may be entitled to relief.' " <u>Colburn v. Upper Darby Twp.</u>, 838 F.2d 663, 665–66 (3d Cir. 1988) (quoting <u>Estate of Bailey by Oare v. Cnty. of York</u>, 768 F.2d 503, 506 (3d Cir. 1985)). The plaintiff must describe " 'enough facts to raise a reasonable expectation that discovery will reveal evidence of' [each] necessary element" of the claims alleged in the complaint. <u>Phillips v. Cnty. of Allegheny</u>, 515 F.3d 224, 234 (3d Cir. 2008) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 556 (2007)). Moreover, the

plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of litigation." Id. at 234–35. In evaluating the sufficiency of a complaint the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994) (citations omitted). The court does not have to accept legal conclusions or unwarranted factual inferences. See Curay–Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

The federal rules require only that plaintiff provide "a short and plain statement of the claim establishing that the pleader is entitled to relief," a standard which "does not require detailed factual allegations," but a plaintiff must make "a showing, rather than a blanket assertion, of entitlement to relief that rises above the speculative level." McTernan v. N.Y.C., 564 F.3d 636, 646 (3d Cir. 2009) (citations and internal quotations and quotation marks omitted).

**B. Analysis**

The defendants argue that Count V should be dismissed because the plaintiff "fails to provide specific instances of which parts of the agreement, if any, were violated." (Doc. 13, Def.'s Br. in Supp. at 3). In response, the plaintiff points

us to the complaint, which it argues is ripe with very specific allegations of breach. We agree with the plaintiff.

The twenty-page complaint before us contains seventy paragraphs of allegations. In reviewing, more specifically, Paragraph 17 through Paragraph 35, we find eighteen paragraphs of allegations that pertain directly to violations of the settlement agreement. These paragraphs detail, in many cases, to the exact date, instances of the defendants' interference with the plaintiff's business. For example, in Paragraph 21 the plaintiff alleges that on August 14, 2017, the defendants posted on social media a new mandrel that the defendants were selling. The defendants' posting claimed that "the knock-off guys [were] selling them so [the defendants] will too." (Doc. 1, Comp. ¶ 21). The defendants depicted this "new mandrel," however, with a custom photo of the plaintiff's mandrel that was taken from the plaintiff's webpage.

The plaintiff has included a copy of the settlement agreement as an exhibit to the complaint. According to the settlement agreement submitted by the plaintiff, the parties agreed to "not in any way . . . disparage the other Party . . . regarding their products, Patents, prior business relations, past conduct during their affiliation with each other, or the matters described within the Lawsuit." (Doc. 1-1, Settlement Agreement ¶ 8).

As such, we find that, with respect to Count V breach of contract, the plaintiff has sufficiently stated a claim upon which relief maybe granted.

**Conclusion**

For the reasons set forth above, we find that the plaintiff has standing to raise its false advertising claim. Further, the defendants have raised no convincing arguments regarding dismissal of the Federal Trademark Infringement claim, and plaintiff has adequately plead a breach of contract claim. Accordingly, we will deny the defendants' motion to dismiss. An appropriate order follows.

**Date: August 6, 2018**             **s/ James M. Munley_____**
                                      **JUDGE JAMES M. MUNLEY**
                                      **United States District Judge**